******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

EVANGELINE KIEWLEN ET AL. *v.*
CITY OF MERIDEN ET AL.
(SC 19423)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald,
Espinosa and Robinson, Js.

*Argued February 17—officially released June 9, 2015*

*Thomas A. Weaver*, for the appellants (plaintiffs).

*John H. Gorman*, associate city attorney, for the
appellees (defendants).

*Opinion*

ZARELLA, J. The primary issue in this case is whether the defendants, the city of Meriden (city) and the Meriden Municipal Pension Board, properly calculated the health insurance emoluments of the plaintiffs, which they receive as part of their pension from the city. The plaintiffs consist of two groups of claimants: (1) widows of deceased Meriden police officers or firefighters (plaintiff widows); and (2) retired Meriden police officers or firefighters who have been divorced or widowed since they retired (plaintiff retirees).[1] The plaintiffs appeal from the judgment of the trial court, which rejected their claim that they are entitled to greater health insurance emoluments under the city's pension plan than the city has provided to them. On appeal, the plaintiffs challenge the trial court's interpretation of the city's pension plan and contend that the city has incorrectly calculated their health insurance emoluments. We conclude that the city improperly reduced the health insurance emoluments of the plaintiff widows but not those of the plaintiff retirees. Accordingly, we reverse in part the trial court's judgment and remand the case for further proceedings.

The record reveals the following facts, as stipulated to by the parties, and procedural history, much of which is also set forth in *Awdziewicz* v. *Meriden*, 317 Conn.    ,    A.3d    (2015), a companion case arising out of the same factual circumstances but involving distinct legal issues. Upon retirement, Meriden police officers and firefighters are entitled to collect a pension from the city according to the provisions of the Meriden City Code (city code) and Meriden City Charter (city charter).[2] Under the provisions of the city code and city charter, not only are retired police officers and firefighters entitled to collect a pension from the city, but so too are the surviving spouses of such retirees.

Among the pension benefits to which retired Meriden police officers and firefighters and their spouses are entitled are health insurance emoluments, which the city agreed to provide when it entered into a stipulated judgment with the Retired Police and Firemen's Association of Meriden, Inc., among others, in 1982. In the stipulated judgment, the city agreed to provide retired Meriden police officers and firefighters and their dependents with the option to participate in group health, dental and life insurance policies that the city offers to active police officers and firefighters, or to receive cash payments from the city of equivalent value. In effect, the city either pays a certain percentage of the cost of insurance for each retiree and his dependents, or, if a retiree chooses to opt out of the coverage offered by the city, the city adds to the retiree's pension benefit the amount that it would have paid for the retiree's insurance coverage if the retiree had opted to retain such coverage.

Since 1989, the city has been self-insured. The city calculates pensioners' health insurance emoluments on the basis of the cost of health insurance for active employees, which the city obtains each year from its insurance administrator. The cost of health insurance for each active employee depends on the number of dependents that the employee claims; the greater the number of dependents, the greater the cost. Thus, a retiree's or surviving spouse's health insurance emolument is determined by the number of dependents that are claimed. The city assigns insureds to one of three plans: an insured who claims no dependents is placed in the "single" plan; an insured who claims one dependent is placed in the "member [plus] one" plan; and an insured who claims more than one dependent is placed in the "family" plan. Although the precise coverage provided to insureds under each plan may change from year to year, the city generally pays about 25 percent more for insureds in the family plan than for insureds in the member plus one plan, and generally pays about twice as much for insureds in the member plus one plan than for insureds in the single plan, regardless of whether the insured is an active employee, retiree or surviving spouse. With respect to each of the foregoing plans, a retiree receives approximately one half of the emolument that an active police officer or firefighter receives, and a surviving spouse receives approximately one half of what a retiree receives.[3] Thus, a surviving spouse receives about one fourth of what an active Meriden police officer or firefighter receives under the same plan.

In administering these health insurance plans for retirees and surviving spouses, the city changes their status when there is a change in the number of dependents that they can claim. That is, when the number of dependents an insured can claim increases, whether through marriage or having a child, or decreases, whether through divorce, the death of a dependent, or when a dependent reaches the age at which he or she becomes ineligible to participate, the city transfers insureds from one plan to another accordingly.

In the present case, the city reduced the plaintiffs' health insurance emoluments after the number of dependents that they could claim decreased. With respect to two of the plaintiff widows, each of them had been married to a retiree with no other dependents and, thus, were participating in the member plus one plan before their husbands died. A third plaintiff widow had been married to a Meriden police officer who died while he was actively employed.[4] The fourth plaintiff widow was married to a retired Meriden firefighter, and they were participating in the family plan before his death. When their husbands died, the city placed each of the plaintiff widows in the single plan and provided them with the corresponding emolument, which is less

than the emolument under the family or member plus one plan.[5] Likewise, with respect to the plaintiff retirees, each of them had been married with no other dependents at the time of their retirement and, thus, were participating in the member plus one plan. Thereafter, each of them either became divorced or their spouses passed away, at which time the city removed them from the member plus one plan and placed them in the single plan, under which they received a reduced emolument.

It was the foregoing practice of the city that precipitated the present action. The plaintiff widows objected to the city changing their status from family or member plus one to single after their spouses died, and the plaintiff retirees objected to the city changing their status from member plus one to single after they became divorced or their spouses died.[6] In their amended complaint, the plaintiffs sought a writ of mandamus compelling the city to pay them the health insurance emoluments that they received at the time of the retiree's retirement or, in the case of the plaintiff widows, at the time of the death of their respective spouses, without any change in their status to reflect the death of, or their divorce from, their spouses. The plaintiffs further claimed that the city, in placing them in the single plan and thereby reducing their health insurance emoluments, had breached its "retirement contract" with the plaintiffs and the implied covenant of good faith and fair dealing, violated the 1982 stipulated judgment, and violated their rights under the Connecticut constitution. The plaintiffs also sought damages under 42 U.S.C. §§ 1983 and 1985 for the alleged violation of their rights to due process and equal protection under the United States constitution. Finally, in light of the alleged federal constitutional violations, the plaintiffs sought attorney's fees from the city pursuant to 42 U.S.C. § 1988 (b).[7]

The case was tried together with *Awdziewicz* v. *Meriden*, Superior Court, judicial district of New Haven at Meriden, Docket No. NNI-CV-07-4014676-S.[8] The parties stipulated to the fact that each of the collective bargaining agreements that the city has entered into with the unions representing Meriden police officers and firefighters since 1993 have recited or incorporated by reference the provisions of the prior version of the city charter that control the plaintiffs' pension benefits, namely, §§ 85D and 85G.[9] See footnote 2 of this opinion. The trial court found that, since at least 1983, the city has provided retired Meriden police officers and firefighters and their dependents with health insurance emoluments in accordance with the 1982 stipulated judgment. In their posttrial brief, the plaintiffs argued that, under the terms of § 85D, the plaintiff retirees were entitled to a health insurance emolument based on their status at the time of their retirement, and that, under § 85G, the plaintiff widows were entitled to a health insurance emolument based on their status at the time their spouses died.

The trial court rejected the plaintiffs' interpretation of §§ 85D and 85G and rendered judgment for the defendants. The trial court reasoned that "the plaintiffs' construction would create a scenario whereby, in essence, the city would be awarding a health insurance emolument to [a] deceased person, which can only be considered a bizarre result." The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal, the plaintiffs raise the same claim that they raised at trial, namely, that, under § 85D, the plaintiff retirees are entitled to a health insurance emolument based on their status at the time of their retirement, and that, under § 85G, the plaintiff widows are entitled to a health insurance emolument based on their status when their spouses died. In essence, the plaintiffs contend that these provisions of the city charter prohibit the city from reducing their health insurance emolument when the number of dependents they can claim decreases. In response, the city asserts that the trial court correctly concluded that, under §§ 85D and 85G, the city was free to change the plaintiffs' health insurance emoluments when the number of dependents they could claim changed. As an alternative ground for affirmance, the city argues that the plaintiffs' claims are barred by laches and two statutes of limitations. The city concedes, however, that the trial court rendered judgment in its favor without addressing these special defenses on their merits. We conclude that the city improperly reduced the health insurance emoluments of the plaintiff widows but not those of the plaintiff retirees. Accordingly, we reverse in part the judgment of the trial court and remand the case to that court with direction to determine whether the defendants' special defenses serve to bar the claims of the plaintiff widows for a writ of mandamus, and alleging breach of contract and a violation of the stipulated judgment, and, if not, to determine the relief to which the plaintiff widows are entitled.

"As with any issue of statutory construction, the interpretation of a charter or municipal ordinance presents a question of law, over which our review is plenary. . . . In construing a city charter, the rules of statutory construction generally apply. . . . In arriving at the intention of the framers of the charter the whole and every part of the instrument must be taken and compared together. In other words, effect should be given, if possible, to every section, paragraph, sentence, clause and word in the instrument and related laws." (Citations omitted; internal quotation marks omitted.) *Broadnax* v. *New Haven*, 270 Conn. 133, 160–61, 851 A.2d 1113 (2004).

We begin our analysis by examining the language of the city charter provisions at issue. Section 85D sets

the pension rate for a retired Meriden police officer or firefighter at "one-half of the prevailing rate of pay for the rank he has attained and holds at the time of his retirement." Section 85D defines "[p]revailing rate of pay" as "the annual pay as fixed from time to time by the [state] board of public safety,[10] and in addition thereto shall include such cost-of-living bonus or other emolument as may be granted to the active members of the fire and police departments . . . ." (Footnote added.) Section 85G establishes the pension rate for surviving spouses of retirees and active Meriden police officers and firefighters, and provides in relevant part: "The widow of a member of either department, active or retired, shall receive during her lifetime, or until she remarries, a pension equal to one-half the pension to which her husband was entitled or which he received at the time of his death."

We conclude that the language of §§ 85D and 85G is plain and unambiguous. Section 85D establishes generally that retired Meriden police officers and firefighters are entitled to receive from the city one half of the compensation that active Meriden police officers and firefighters of the same rank receive, including any "other emolument," such as health insurance. Section 85G establishes that the surviving spouse of a Meriden police officer or firefighter is entitled to receive one half of the compensation that his or her deceased spouse was collecting at the time of his or her death. Conspicuously absent from either §§ 85D or 85G is any reference to the precise amount to which a retiree or surviving spouse is entitled for his or her health insurance emolument, or how the health insurance emolument is to be administered by the city. Rather, §§ 85D and 85G only set forth in relative terms the pension benefits to which retirees and surviving spouses are entitled.

In view of our interpretation of §§ 85D and 85G, we conclude that the city improperly reduced the health insurance emoluments of the plaintiff widows but not those of the plaintiff retirees. Under § 85G, the plaintiff widows are entitled to collect a pension that is one half of what their spouses were collecting at the time of their deaths. At the time of their deaths, two of those spouses were collecting a pension that included the member plus one health insurance emolument, one was collecting the family health insurance emolument, and one was an active employee. Thus, according to § 85G, two of the plaintiff widows are entitled to collect one half of the member plus one health insurance emolument for retirees, which is equal to the member plus one health insurance emolument for widows, one is entitled to collect one half of the family emolument for retirees, which is equal to the family emolument for widows, and one is entitled to collect one half of the health insurance emolument that her husband received as an active employee at the time of his death. By

transferring the plaintiff widows to the single plan and reducing their health insurance emoluments, the city violated § 85G.[11]

We reject the city's claim that § 85G, when read in conjunction with § 85D, allows the city to reduce the plaintiff widows' health insurance emoluments after the deaths of their spouses. The city claims that, because § 85D makes a retiree's pension dependent on the compensation of an active employee, and § 85G makes a surviving spouse's pension dependent on that of a retiree, the health insurance emolument of a surviving spouse is therefore dependent on that of an active employee. In light of this connection between surviving spouses and active employees, the city contends that it may adjust the status of a surviving spouse when there is a change in the number of dependents that a surviving spouse can claim because that is the city's practice with respect to active employees. In essence, the city argues that, if it changes the status of an active city employee who loses his or her only dependent from member plus one to single, then it is permitted to do the same for surviving spouses.

Even were we to assume that the city, in fact, adjusts the status of active employees when there is a change in the number of dependents they can claim,[12] the city's argument is unavailing. Under § 85G, a surviving spouse's health insurance emolument is not indexed to the compensation of *any* retiree. Rather, it is indexed to that of a *particular retiree* at a *particular time*, namely, his or her spouse at the time of the spouse's death. Thus, the city draws a false comparison by likening a surviving spouse with no dependents to an active employee with no dependents. In light of § 85G, the city's practices with respect to active employees are not relevant to determining the pension benefits of a surviving spouse other than to determine what a surviving spouse's deceased spouse was entitled to collect at the time of his or her death. Moreover, the city would have us read § 85G as making a surviving spouse's pension benefits dependent on what a retiree is entitled to collect *after* his death. We cannot ignore the language of § 85G, however, which plainly requires a surviving spouse's pension benefit to be calculated on the basis of the benefit that the deceased spouse received at the time of his or her death.

We also reject the city's contention that surviving spouses should not be allowed to remain in the member plus one or family plan when they do not have the requisite number of dependents because that would effectively require the city to pay a health insurance emolument for a deceased or otherwise ineligible person. The city's concern is mitigated at least partially by the fact that a surviving spouse is entitled to only one half of what his or her deceased spouse was entitled to collect at the time of death. The plaintiff widows do

not claim that they are entitled to the full emolument they were receiving when their spouses died but, rather, that they are entitled to one half of that amount. More to the point, however, the city's claim is without merit because it is unconnected to the controlling provisions of the city charter. Sections 85D and 85G do not specify the particular amount that a retiree or surviving spouse is entitled to receive as a health insurance emolument, or how the city is to provide that emolument. Accordingly, the fact that the city does not provide health insurance for deceased persons is irrelevant to the calculation of the plaintiff widows' health insurance emoluments under the terms of § 85G.

For the same reason, the city's emphasis on the term "active" in § 85D is misplaced. In interpreting § 85D, the city and the trial court both focused on the fact that § 85D makes a retiree's pension benefit dependent on the compensation "as may be granted to the *active* members of the fire and police departments . . . ." (Emphasis added.) It is clear that the term "active" in § 85D refers to persons currently employed by the Meriden Police Department or Meriden Fire Department, as opposed to retired or deceased employees of those agencies. There is no dispute that a retiree's pension is directly tied to the compensation of active employees under § 85D. However, as we previously discussed, this connection between retirees and active employees does not change the fact that, under § 85G, a surviving spouse's pension benefit is tied directly to the pension benefit to which his or her deceased spouse was entitled at the time of the spouse's death.

Likewise, the city's claim that it should not have to pay a health insurance emolument for a deceased person because the stipulated judgment bases the emolument on "the *participation* of each retired policeman and fireman and his respective dependents" also is without merit. (Emphasis added.) As counsel for the defendants conceded at oral argument, retirees and their dependents are not required to participate in the group health insurance plan offered by the city in order to receive a health insurance emolument. Rather, the stipulated judgment allows retirees to elect to receive an equivalent cash payment from the city. The city's reliance on the term "participation" therefore does not alter our interpretation of §§ 85D and 85G. Thus, we conclude that the city improperly reduced the plaintiff widows' health insurance emoluments because the city did not provide them with one half of the emolument to which their respective spouses were entitled at the time of their deaths, as required by § 85G.

We do not reach the same conclusion with respect to the plaintiff *retirees*, however, because § 85G expressly pertains only to the surviving spouses of Meriden police officers and firefighters. The plaintiff retirees' pension benefits are controlled by § 85D, and, unlike § 85G,

§ 85D does not require retirees' benefits to be determined as of a particular point in time. Rather, § 85D expressly makes retirees' pension benefits dependent on the compensation of active police officers and firefighters, "*as fixed from time to time* by the [state] board of public safety . . . ." (Emphasis added.) Given that § 85D ties a retiree's health insurance emolument to that of an active employee, the determinative factor for purposes of § 85D is how the city treats active employees when there is a change in the number of dependents they can claim for health insurance purposes. The plaintiffs failed to present any evidence to establish that the city does *not* change the status of active Meriden police officers and firefighters for health insurance purposes when the number of dependents they can claim changes. Accordingly, the plaintiff retirees cannot prevail on their claim that the city improperly reduced their health insurance emoluments under § 85D.[13] Thus, we conclude that the trial court properly rejected their claim.

The plaintiff retirees purport to make two additional claims, but neither actually constitutes a basis on which to reverse the trial court's judgment. First, the plaintiff retirees argue that the trial court erred in not adopting a 2002 memorandum drafted by the city's corporation counsel that interpreted §§ 85D and 85G as supporting their position, which was admitted into evidence at trial. This is not a basis for reversing the trial court's judgment, however, because, as the plaintiff retirees acknowledge, interpreting the city charter provisions is a question of law for the trial court to decide. The memorandum in question reflected how the city's corporation counsel interpreted §§ 85D and 85G, and the trial court was free to consider that in interpreting those provisions, but the trial court was not required to adopt the opinion in corporation counsel's memorandum. The plaintiffs cite no authority suggesting otherwise.

Second, the plaintiff retirees argue that the trial court improperly extended deference to the city's practice of changing the health insurance emolument of an insured in proportion to the number of dependents that the insured can claim. Nowhere in the trial court's memorandum of decision, however, does the trial court indicate that it deferred to the city's practice of changing the status of insureds, and the plaintiff retirees do not provide a citation indicating such. In their brief, the plaintiffs discuss how the city's corporation counsel advised city officials that deference should be afforded to the city's past practices, but they never establish that the trial court adopted the same position. Accordingly, we conclude that the plaintiff retirees' argument does not constitute a colorable claim.

In sum, we conclude that the city improperly reduced the health insurance emoluments of the plaintiff widows in violation of § 85G but not those of the plaintiff

retirees. Because the trial court made no findings of fact with respect to the city's special defenses, we decline to consider those defenses as alternative grounds for affirming the trial court's judgment with respect to the plaintiff widows. See, e.g., *White* v. *Mazda Motor of America, Inc.*, 313 Conn. 610, 619–20, 99 A.3d 1079 (2014) ("[b]ecause our review is limited to matters in the record, we . . . will not address issues not decided by the trial court").

The judgment is reversed with respect to the plaintiffs Evangeline Kiewlen, Eleanor Barnard, Lynn Goff, and Gloria Clancy, and the case is remanded with direction to determine whether one or more of the defendants' special defenses bar the claims of those plaintiffs for a writ of mandamus, and alleging breach of contract and a violation of the stipulated judgment, and, if not, to determine, in accordance with this opinion, the relief to which those plaintiffs are entitled; the judgment is otherwise affirmed.

In this opinion the other justices concurred.

[1] The plaintiffs in this action are Evangeline Kiewlen, Richard Piccirillo, Eleanor Barnard, Lynn Goff, Gloria Clancy, John Iannuzzi and Daniel Lyons. Kiewlen, Barnard, Goff, and Clancy are widows of former Meriden police officers or firefighters who died either before or after retirement, and Piccirillo, Iannuzzi, and Lyons are retired Meriden police officers or firefighters who have been divorced or widowed since retiring. We refer to these two groups of claimants, namely, the plaintiff widows and the plaintiff retirees, collectively as the plaintiffs.

[2] The parties agree that the provisions of a prior version of the city charter are binding in the present case. The pension plan for retired Meriden police officers and firefighters was first established by a special act of the General Assembly, which amended the city charter in 1949. See 25 Spec. Acts 977, No. 229, § 2 (1949), amended by 26 Spec. Acts 947, 947–48, No. 340 (1953). The provisions of the prior city charter were effectively incorporated into the present city code and city charter. Section C9-6 (3) of the present city charter provides: "Nothing herein shall be construed as in any way altering or affecting the pension rights of any employees of any department of the City of Meriden whose employment with the City commenced prior to the effective date of this Charter. The provisions of the previous Charter of the City of Meriden and of any special act pertaining to the pension rights of any employee of the City of Meriden whose employment commenced prior to the effective date of this Charter are hereby expressly reaffirmed." There is no dispute that the plaintiffs or the plaintiffs' deceased spouses commenced their employment with the city prior to the adoption of the present city code and city charter. Thus, there is no dispute that the provisions of the prior city charter control in the present case.

[3] In other words, the city pays approximately twice the amount to provide health insurance to an active employee as it does to a retiree and pays approximately twice as much to provide health insurance to a retiree as it does to a surviving spouse. For example, in 2002, the city paid insureds for their health insurance emoluments in the following manner: Under the single plan, active Meriden police officers and firefighters received $388.59, retirees received $194.29, and surviving spouses received $97.15. Under the member plus one plan, active Meriden police officers and firefighters received $841.29, retirees received $420.65, and surviving spouses received $210.32. And, under the family plan, active Meriden police officers and firefighters received $1068.33, retirees received $534.17, and surviving spouses received $267.08.

[4] This plaintiff widow is Lynn Goff. There is no evidence in the record as to whether she and her husband had claimed any dependents or whether they were receiving health insurance under a family plan or the member plus one plan before his death.

[5] The trial court used the following example to illustrate the city's policy of changing the status of insureds: "[I]n the case of the named plaintiff,

Evangeline Kiewlen, in January, 1990, she and her husband, retiree Vincent Kiewlen, were in the [member plus one] category and receiving a health insurance emolument of $243.20 a month. When Vincent Kiewlen passed away later that year, Evangeline Kiewlen was then put into the [single] category, and, effective October 1, 1990, she received one half of the emolument that Vincent [Kiewlen] would have received [as a single retiree], which was $59.37. The court finds that this case is representative of the city's practice in all pension cases falling under [the city charter provisions] and the stipulated judgment." (Internal quotation marks omitted.)

With respect to the plaintiff Gloria Clancy, the record is not clear as to why she was removed from the family plan and placed in the single plan instead of the member plus one plan after her husband's death. It appears that change in her status was the result of her child or children no longer being eligible as dependents for health insurance purposes.

[6] It appears that the plaintiffs filed a motion for class certification in this case but that the motion was either denied or not acted on. According to the trial court, the "court's file [was] unclear on this point."

[7] Because the plaintiffs have inadequately briefed their claim regarding the city's breach of the implied covenant of good faith and fair dealing, and their federal constitutional claims under 42 U.S.C. §§ 1983 and 1985, state constitutional claim, and claim for attorney's fees under 42 U.S.C. § 1988 (b), we decline to address them. See, e.g., *Electrical Contractors, Inc.* v. *Dept. of Education*, 303 Conn. 402, 444 n.40, 35 A.3d 188 (2012) (claims that are not mentioned or not briefed beyond a bare assertion, or that consist of conclusory assertions with no mention of relevant authority, are inadequately briefed).

[8] Initially, the trial court issued the same memorandum of decision in both the present action and in *Awdziewicz*, but the Appellate Court granted the parties' motion to remand the case so that the trial court could separately address the legal claims in each case. On remand, the trial court issued an amended memorandum of decision in *Awdziewicz* that specifically addressed the plaintiffs' claims in that case rather than those of the plaintiffs in the present action.

[9] It is unclear from the record whether these provisions appeared in a prior version of the city code or city charter, or both. We assume, for purposes of our analysis, that the provisions were in a prior version of the city charter.

[10] The former state Board of Public Safety is now the state Department of Emergency Services and Public Protection.

[11] In so holding, we recognize that our interpretation of § 85G in the present case may cause some surviving spouses to receive a different health insurance emolument than other surviving spouses in the same position. This is a direct consequence of the fact that § 85G makes a surviving spouse's health insurance emolument dependent on his or her circumstances when his or her spouse dies. Thus, some surviving spouses will receive a greater health insurance emolument than other surviving spouses and even some retirees and active employees. These scenarios are, in part, what led the trial court to interpret § 85G as allowing the city to adjust the status of a surviving spouse after his or her spouse's death, as it deemed those scenarios to produce a "bizarre result."

There is nothing bizarre, however, about structuring pension benefits around a surviving spouse's circumstances at the time of his or her spouse's death. If the legislature no longer wishes to fix a surviving spouse's pension benefit as of the time of his or her spouse's death, then it is free to amend § 85G. But we are not at liberty to ignore the plain language of § 85G simply because there may be a manner in which health insurance emoluments could be administered to allow surviving spouses in the same position to receive an identical amount.

[12] We note that there is no evidence in the record as to whether the city adjusts the status of active employees when there is a change in the number of dependents that they can claim, and the trial court's findings with respect to the city's practices were limited only to how the city administers the pension benefits of retirees and surviving spouses.

[13] Both the plaintiffs and the defendants rely on *Kosienski* v. *Meriden*, Superior Court, judicial district of New Haven at Meriden, Docket No. NNI-CV-02-0282973-S (January 25, 2005), and claim that it supports their respective interpretations of § 85D. *Kosienski*, however, is not relevant to the plaintiffs' claim. In *Kosienski*, certain retirees of the Meriden Police Department claimed that the city had violated § 85D by declining to increase their pension benefits in proportion to the compensation for active employees

of the same rank. The trial court agreed with the retirees' interpretation of § 85D and rendered judgment in their favor. In the present case, there is no dispute that the plaintiff retirees' pension benefits increase in proportion to the compensation of active employees, and *Kosienski* is not otherwise pertinent to resolving the plaintiffs' claim.